1  Dara Tabesh, CA Bar No. 230434
   dara.tabesh@ecotechlaw.com
2  EcoTech Law Group, P.C.
   331 1st St. Suite C
3  San Francisco, CA 94105
   Telephone:  (415) 503-9164
4  Facsimile:  (415) 651-8639

5  Filipp I. Kofman (VA Bar No. 82302) (*pro hac vice* application forthcoming)
   fk@legal-counsels.com
6  Kevin R. Garden (VA Bar No. 30244) (*pro hac vice* application forthcoming)
   kg@legal-counsels.com
7  International Legal Counsels, PC
   901 North Pitt Street, Suite 325
8  Alexandria, VA 22314
   Tel.:  (703) 535-5565
9  Fax:  (703) 977-1330

10 Attorneys for Plaintiff
   Vertamedia LLC

11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                       SAN FRANCISCO DIVISION
14

15
   VERTAMEDIA LLC, a Nevada              Case No.
16 Corporation,
                                         **COMPLAINT**
17              Plaintiff,

18       v.

19 BITESIZE NETWORKS, INC. f/k/a
   MEVIO, INC., a Delaware Corporation,
20
                Defendant.
21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFF VERTAMEDIA LLC'S COMPLAINT

1.      Vertamedia LLC ("Vertamedia" or "Plaintiff"), by and through its undersigned attorneys, files this Complaint against BiteSize Networks, Inc. f/k/a Mevio, Inc. ("Mevio" or "Defendant") and states as follows:

### NATURE OF THE ACTION

2.      This is an action for breach of contract and *quantum meruit* arising from Mevio's failure to make payment to Vertamedia with respect to services sought by, contracted for, received and accepted by Mevio.  As of the date of this Complaint, Mevio has not paid, and has repudiated its obligation to pay, $489,700.52 in invoiced services provided to Mevio by Vertamedia pursuant to a services agreement between the parties.  Vertamedia now brings this action in order to recover the $489,700.52 owed to it by Mevio, in addition to prejudgment interest and other monetary awards as requested by Vertamedia and deemed appropriate by this Court.

### PARTIES

3.      Plaintiff Vertamedia LLC is a limited liability company organized under the laws of the State of Nevada and having its registered address at 5348 Vegas Dr. #1391, Las Vegas, NV 89108.

4.      Defendant BiteSize Networks, Inc. f/k/a Mevio, Inc. is a corporation incorporated under the laws of the State of Delaware and having its principal place of business at 577 2nd Street, Suite 203, San Francisco, CA 94107.

### JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action because Vertamedia and Mevio are citizens of different states and Vertamedia's claims for relief exceed the sum of $75,000, exclusive of interest and costs and without considering counterclaims.  *See* 28 U.S.C. § 1332.

6.      This Court has personal jurisdiction over Vertamedia and Mevio because the parties have consented to the exclusive personal jurisdiction of the State of California and because Mevio has its principal place of business in San Francisco, California.

7.      Venue is proper under 28 U.S.C. § 1391(b) in the Northern District of California because Mevio resides in this judicial district.

## FACTUAL BACKGROUND

8.      Vertamedia is an online marketing/advertising company that specializes in Pay Per Click ("PPC") contextual text advertisements and Cost Per View ("CPV") advertisements.

9.      Upon information and belief, Mevio is an online video entertainment network that produces "proprietary, premium, Hollywood studio-quality entertainment" and delivers its product to consumers through its website located at <www.bitesizetv.com>.  Mevio claims that it makes more than 1,000 episodes of original content available for its online customers each month.

10.      Companies that wish to generate traffic for their websites ("advertisers"), such as Mevio, engage Vertamedia to provide that traffic through Vertamedia's high-quality text and pop-up/pop-under advertisements, which Vertmedia places on websites owned by Vertmedia's partners ("publishers").

11.      When a visitor to a publisher's website clicks on an advertisement placed by Vertamedia, she is directed to the advertiser's website.

12.      Vertamedia provides its advertisers with two main advertising solutions: PPC contextual advertisements and CPV pop-up/pop-under advertisements.

13.      PPC contextual advertisements are shown as sponsored listings on Vertamedia's publishers' web properties. Each text advertisement includes a title, description and URL of the advertiser`s website.  When users search on a publisher's website using a keyword set by the advertiser, the advertiser's advertisements may appear next to the search results, which the user may then click to be redirected to the advertiser's website.

14.   The advertiser pays Vertmedia only for user clicks on its advertisements (so called "clicks-through"), which redirect the user to the advertiser's website, thereby generating traffic for the website.

15.   When a user clicks on a PPC contextual advertisement, she leaves that website and is redirected to the advertiser's website.

16.   When a user clicks on a CPV pop-up/pop-under advertisement, she does not leave the current website that she is on, but rather, a separate browser window opens behind or above a user's active browser window, which then is automatically directed to the advertiser's website.

17.   All online traffic that Vertamedia provides through its publishers is filtered both by a third-party, click-fraud detection tool (provided by Adometry, Inc.), as well as by internal predictive click-quality scoring tools to ensure that the clicks-through are made by legitimate potential customers and not generated by software or other improper means.

18.   On September 12, 2012, Mevio registered as an advertiser through Vertamedia's website <www.vertamedia.com>, thereby agreeing to the Vertamedia Terms of Services.  (*See* Exhibit A (correspondence from Mevio's representative to Vertamedia confirming registration of Mevio's account on <www.vertamedia.com>).)

19.   On October 1, 2012, Vertamedia and Mevio entered into a Traffic Vendor Agreement (the "Agreement").  (*See* Exhibit B.)

20.   Pursuant to the terms of the Agreement, Mevio engaged Vertamedia to direct online traffic to Mevio's websites and applications, specifically to its <www.mevio.com> website (including its subdomains, which are webpages that are related to the <www.mevio.com> main webpage).

21.   Vertamedia agreed to deliver website traffic to Mevio in accordance with a daily payment cap (the "Daily Cap") set by Mevio.

22.   A Daily Cap is a dollar value in excess of which Mevio would not be charged for traffic provided by Vertmedia for that day. The Daily Cap could be changed by Mevio on a daily basis.

CASE NO.

COMPLAINT AND JURY DEMAND

23.     In order to change the Daily Cap, Mevio would send an e-mail to Vertamedia requesting a revised Daily Cap, which Vertamedia would implement going forward.  If Vertamedia did not receive an e-mail from Mevio requesting a revised Daily Cap, the prior day's Daily Cap would be implemented for that day.  (*See* Exhibit D (correspondence from Mevio's representative to Vertamedia describing the Daily Cap system).)

24.     Per the Agreement, within ten (10) calendar days of each month, Vertamedia provided to Mevio an invoice setting forth the traffic provided to Mevio for the previous month and amount due to Vertamedia pursuant to that invoice.  (Exhibit B at 2-3.)

25.     Between October 2012 and August 2013, Vertamedia delivered traffic to Mevio, posted invoices in accordance with the above procedure, and received timely payment from Mevio.

26.     On October 1, 2013, Vertamedia sent to Mevio an invoice for traffic ordered by Mevio and delivered by Vertamedia for the period of September 1, 2013-September 30, 2013, in the amount of $411,441.52 (the "September Invoice").  (Exhibit C.)

27.     In the beginning of October 2013, Mevio began lowering its Daily Cap.

28.     Mevio explained that it was lowering its Daily Cap because it was experiencing a lower demand from its users.

29.     On October 16, 2013, however, Mevio increased its Daily Cap by 100%.  (*See* Exhibit E.)

30.     On October 17, 2013, Mevio again increased its Daily Cap, this time by 50%. (*See* Exhibit F.)

31.     In the meantime, Mevio had failed to make any payment toward the September Invoice, which, as of October 16, 2013, was overdue.

32.     On October 18, 2013, Vertamedia's representative spoke to Jennifer White, Mevio's Senior Vice President of Sales and Business Development, regarding the unpaid September Invoice.  Ms. White indicated that the delay in payment was due to an issue Mevio

CASE NO.

was having collecting payment from one of its largest clients.  Ms. White reiterated Mevio's commitment to paying the September Invoice in full.

33.     On that day, Mevio reduced its Daily Cap to zero, effectively stopping the delivery of Vertamedia's services to Mevio.  (*See* Exhibit G.)

34.     On October 31, with the September Invoice still unpaid, Vertamedia's representative again spoke to Ms. White, who indicated that Mevio was facing financial difficulties arising from a multi-million dollar chargeback from its client.  She promised, however, that Mevio would pay the September Invoice, less $24,000, in December 2013.  Ms. White stated that the $24,000 balance on the September Invoice would be paid as soon as Mevio resolved the chargeback issue with its client.

35.     On December 11, 2013, Vertamedia's representative again contacted Mevio to inquire when payment of the September Invoice would be made.  Ms. White responded that Mevio was still waiting to receive payments from its clients before making payment to Vertamedia.  (*See* Exhibit H.)

36.     Despite its assurances that payments would be made, Mevio did not make any payments toward the September Invoice in December.

37.     On November 4, 2013 Vertamedia issued the final invoice under the Agreement for traffic delivered by Vertamedia to Mevio for the period between October 1, 2013-October 18, 2013, for $78,259.00 (the "October Invoice" and together with the September Invoice, the "Invoices").  (Exhibit I.)

38.     On January 9, 2014, Mevio's COO/CFO Holli Bohren notified Vertamedia that Mevio would not be making payment to Vertamedia for the Invoices because it deemed that Vertamedia provided Mevio with fraudulent traffic.  (*See* Exhibit J.)

39.     Prior to this new assertion, Mevio had never once informed Vertamedia that it believed that it was receiving fraudulent traffic from Vertamedia.  Instead, Mevio had stated that it was not paying the Invoices due to its financial situation.

CASE NO.

COMPLAINT AND JURY DEMAND

40.     Mevio was at all times aware that Vertamedia's traffic provided to Mevio was verified as non-fraudulent by a third party, *i.e.*, Adometry, Inc. ("Adometry") pursuant to the Adometry Application Services Agreement.  (*See* <u>Exhibit K</u>.)

41.     Throughout the term of its relationship with Mevio, Vertamedia used Adometry, Inc., to assure the quality of Vertamedia's delivered traffic.

42.     All traffic delivered by Vertamedia to Mevio was checked against Adomtery's block lists, which were updated constantly and provided to Vertamedia by Adomtery on a daily basis.

43.     Upon information and belief, Adometry's block lists included IP addresses of known offenders, servers at co-location facilities that have no known human traffic origination, comprehensive list of known bots (UserAgents used by spider and crawlers), and ad providers used to crawl sites, click on links, and test ad campaigns.

44.     Traffic that matched Adomtery's block lists was immediately blocked, and consequently, was not delivered to Mevio.

45.     Vertamedia also verified the quality of the traffic it provided to Mevio through a variety of industry-standard internal quality screening tools, including CAPTCHA Tests,[1] Blank Page Tests,[2] User Agent Checks,[3] Referrer Checks,[4] and JS Tests.[5]

---

[1] A CAPTCHA is a challenge-response test used by publishers to verify that their users are persons, as opposed to bots (which are automated, non-human users).  It typically involves a user manually typing in a group of letters and numbers which are set out in very unusual fonts in order for the user to access a website, making it very difficult for a bot to access the website. Vertmedia uses the passage rate of the publisher's users to evaluate the quality of the publisher's traffic.

[2] A click test where a portion of the clicks from a publisher's users are directed to a blank page with invisible banner adds.  The invisible banner advertisements are likely to be clicked only by fraudulent traffic, allowing Vertamedia to detect such fraudulent traffic.

[3] Vertamedia's system checks the user's information (operating system, browser version, etc.) when a search request is made and compares it to that user's information when the user clicks on advertisements.  Traffic that is altered between search request and click-through is subject to a higher risk of being fraudulent.

[4] Vertamedia's system checks the referrer URL of the search and click-through, which would be different if traffic is fraudulent.

COMPLAINT AND JURY DEMAND

46.    On April 17, 2014, Vertamedia, through its attorneys, sent a letter demanding full payment of the Invoices.  (Exhibit L.)

47.    As of the date of this Complaint, Mevio has not paid the Invoices, and, accordingly, owes to Vertamedia $489,700.52.

## COUNT I

### (Breach of Contract)

48.    Vertamedia re-alleges the allegations contained in paragraphs 1 through 47 as though fully and completely set forth herein.

49.    Vertamedia and Mevio entered into the Agreement, whereby Vertamedia agreed to deliver online traffic to Mevio's website and subdomains in exchange for payment.

50.    Vertamedia fully performed its obligations under the Agreement.

51.    Mevio, however, has failed to pay the Invoices, despite repeated assurances that payment would be forthcoming.

52.    Therefore, Mevio has breached its contractual obligations under the Agreement by failing to pay the balance on the Invoices.

53.    As a result of Mevio's breach of contract, Vertamedia has sustained damages in the amount of no less than $489,700.52, the unpaid balance of the Invoices.

## COUNT II

### (Quantum Meruit – Pled in the Alternative)

54.    Vertamedia re-alleges the allegations contained in paragraphs 1 through 53 as though fully and completely set forth herein.

55.    From September through October 2013, Vertamedia provided valuable services to Mevio in the form of delivering traffic to Mevio's website and subdomains worth not less than $489,700.52, exclusive of interest thereon.

---

[5] Vertamedia's system checks if the user's java script is enabled and whether information can be saved into the browser's cookies.  Fraudulent traffic users often have java script disabled while human users almost always have java script enabled and it is often impossible to save any information in the cookies of fraudulent traffic users.

56.     From September through October 2013, Vertamedia incurred expenses in the course of providing the aforementioned services to Mevio.

57.     Mevio accepted and benefited from the services provided by Vertamedia.

58.     Vertamedia notified Mevio that it expected to be paid for such services.

59.     Mevio did not pay Veramedia for the services rendered by Vertamedia.

60.     As a result, Mevio has been unjustly enriched by receipt and enjoyment of Vertamedia's services without payment and for which payment was expected and requested, the value of such enrichment being equal to $489,700.52.

### PRAYER FOR RELIEF

**WHEREFORE,** Vertamedia respectfully requests the Court to grant the following relief:

A.     Monetary damages in the sum of $489,700.52, plus prejudgment interest, or such other amount as may be proved by Vertamedia in this action;

B.     Attorneys' fees and costs;

C.     Such additional relief as the Court shall deem necessary and proper.


**ECOTECH LAW GROUP P.C.**

DATED: June 27, 2014                    By: /s/ Dara Tabesh
                                             Dara Tabesh (CA Bar No. 230434)
                                             dara.tabesh@ecotechlaw.com

                                        **INTERNATIONAL LEGAL COUNSELS PC**


                                        By: /s/ Kevin R. Garden
                                             Kevin R. Garden (VA Bar No. 30244)
                                             kg@legal-counsels.com

                                        Attorneys for Plaintiff

COMPLAINT AND JURY DEMAND