UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERTAMEDIA LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>BITESIZE NETWORKS, INC.,<br><br>    Defendant. | Case No.  14-cv-02980-KAW<br><br>**ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE** |

Before the Court is Vertamedia LLC's motion for default judgment. The Court held a hearing on the motion on July 16, 2015. Having considered the moving papers, Plaintiff's supplemental briefing, and the arguments made by counsel, the Court DENIES the motion WITHOUT PREJUDICE for the reasons set forth below.

## I.   BACKGROUND

### A.   Factual background

Plaintiff, a Nevada limited liability company, specializes in pay-per-click ("PPC") contextual text advertisements and cost-per-view ("CPV") advertisements. (Compl. ¶ 8, Dkt. No. 1.) These advertisements are intended to generate traffic on a client's website. (*Id.* ¶ 10.) Vertamedia will post the advertisement on websites owned by its partners, and upon clicking on the advertisement, the user will be re-directed to the client's website. (*Id.* ¶¶ 10, 11.)

Mevio, Inc. is a Delaware corporation and maintains its principal place of business in San Francisco, CA 94107. (*Id.* ¶ 4.) On September 12, 2012, Defendant registered as an advertiser through Plaintiff's website, and in so doing, agreed to Plaintiff's terms of service.[1] (*Id.* ¶ 18, Ex. A.) On October 1, 2012, the parties entered into a traffic vendor agreement pursuant to which (1)

---

[1] John Schaffer, Mevio's Director of Finance and Operations, signed the agreement on behalf of Mevio. Compl., Ex. B. His email signature block reads "MEVIO - BiteSizeTV." Compl., Ex. A.

1  Plaintiff was to direct online traffic to Defendant's websites and applications, including
2  www.mevio.com and its subdomains, and (2) Plaintiff's compensation would be determined in
3  accordance with a daily payment cap set by Defendant. (*Id.* ¶¶ 19, 20, 21, Ex. B.) Defendant
4  could change the daily cap each day by sending Plaintiff an email requesting a revised daily cap,
5  which Plaintiff would implement going forward. (*Id.* ¶ 23.) If Plaintiff did not receive an email
6  from Defendant requesting a revised daily cap, the prior day's cap would remain in effect. (*Id.* ¶
7  23, Ex. D.)

8  The parties' agreement also specified that Plaintiff would provide Defendant with an
9  invoice "within ten (10) calendar days of each month." (*Id.* ¶ 24, Ex. B.) Plaintiff sent Defendant
10 invoices in accordance with this procedure, and Defendant remitted timely payment between
11 October 2012 and August 2013. (*Id.* ¶ 25.)

12 On October 1, 2013, Plaintiff sent Defendant an invoice for services provided during the
13 month of September, which totaled $411,441.52. (*Id.* ¶ 26, Ex. C.) In early October 2013,
14 Defendant began lowering its daily cap because it was experiencing a lower demand from its
15 users. (*Id.* ¶¶ 27, 28.) It then increased its daily cap by 100% on October 16 and increased its
16 daily cap by 50% on October 17. (*Id.* ¶¶ 29, 30, Exs. E & F.)[2]

17 Meanwhile, Defendant had failed to make any payment toward the September invoice,
18 which was overdue as of October 16, 2013. (*Id.* ¶ 31.) On October 18, 2013, Defendant indicated
19 that the delay in payment was due to Defendant's own difficulties with collecting payment from
20 one of its largest clients. (*Id.* ¶ 32.) It also reiterated its commitment to paying the September
21 invoice in full. (*Id.* ¶ 32.) That same day, Defendant reduced its daily cap to zero.[3] (*Id.* ¶ 33, Ex.
22 G.)

23 On October 31, Defendant indicated that it was facing some financial difficulties, but it
24 promised to pay the amount due on the September invoice, less $24,000, in December 2013. (*Id.* ¶

---

[2] Michael Keba, a Senior Business Analyst with Bitesize TV sent both requests. Compl., Exs. E, F. The exhibits to the complaint make it clear that at some point, Plaintiff was dealing exclusively with Bitesize Networks, though it is uncertain when the company began using the Bitesize Networks name in lieu of Mevio.

[3] Michael Keba also sent this request. Compl., Ex. G.

2

34.)  The remaining $24,000 would be paid as soon as Defendant resolved the issues it was having with its client.  *(Id.)*

On November 4, 2013, Plaintiff issued its final invoice under the parties' agreement, totaling $78,259, for services rendered between October 1, 2013, and October 18, 2013.  (*Id.* ¶ 37, Ex. I.)  On January 9, 2014, Holli Bohren, Bitesize Networks' COO & CFO, notified Plaintiff that it would not remit payment for the invoices until they investigated whether Plaintiff had provided fraudulent website traffic.  (*Id.* ¶ 38, Ex. J.)  According to Plaintiff, this was the first time Bitesize Networks raised the issue.  (*Id.* ¶ 39.)  Prior to that, the company had stated that its non-payment was entirely due to its own financial situation.  *(Id.)*  Plaintiff demanded payment on April 17, 2014, to no avail.  (*Id.* ¶ 46, Ex. L.)

### B.     Procedural background

Plaintiff filed its complaint in this Court on June 27, 2014, asserting claims for breach of contract, and in the alternative, quantum meruit.  (Compl. ¶¶ 48-53, 54-60.)  It seeks damages in the amount of $489,700.52, prejudgment interest, and attorneys' fees and costs.  (*Id.* ¶¶ A-C.)

Plaintiff attempted to serve Bitesize Networks by substituted service.  (Cert. of Service, Dkt. No. 11.)  On September 30, 2014, it left copies of the summons and complaint with Jaci Darling, a production manager.  *(Id.)*  It also mailed copies of the summons and complaint to Bitesize Networks at 6250 Hollywood Blvd., 300, Hollywood, CA 90028 on October 1, 2014.  *(Id.)*

Plaintiff moved for the entry of default on December 3, 2014, which the Clerk entered on December 4, 2014.  (Pl.'s Mot. Entry of Default, Dkt. No. 13; Clerk's Default, Dkt. No. 14.)  On February 9, 2015, Plaintiff moved for default judgment.  (Pl.'s Mot. Default J., Dkt. No. 15.)  On March 31, 2015, the Court issued an order requiring Plaintiff to provide supplemental briefing. Mar. 31, 2015 Order, Dkt. No. 17.)  The order read:

> (1) Plaintiff moves for default judgment against Bitesize Networks, though the conduct of another company, Mevio, Inc., is the subject of the complaint. Plaintiff has neither alleged nor briefed why it is appropriate to enter default judgment against Bitesize Networks in this case.
>
> (2) Plaintiff, a Nevada limited liability company, has not identified the citizenship

of any of its members. Without allegations in the complaint that address this, the Court is unable to determine whether it has subject matter jurisdiction over this action. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("An LLC is a citizen of every state of which its owners/members are citizens."). Plaintiff shall therefore brief why the allegations in the complaint are sufficient to satisfy the Court that subject matter jurisdiction exists in this case.

(3) Plaintiff served a copy of the summons and complaint on a production manager of Bitesize Networks, not Mevio, Inc., and did so by substituted service. Plaintiff shall brief whether substituted service on a production manager of Bitesize Networks is proper in this case.

(4) The billing records submitted in connection with the motion indicate that there may have been communications between Plaintiff's counsel and Defendant's counsel. *See, e.g.,* Goldstein-Gureff Decl., Dkt. No. 15-4 ("drafted the response letter to the opposing counsel . . . drafted the instructional letter to the opposing counsel . . . communications with opposing counsel re service of process . . . communications with opposing party.") Plaintiff shall brief whether these communications constitute an appearance by Defendant, which entitles it to notice of the motion for default judgment. Fed. R. Civ. P. 55(b)(2); *see Civic Ctr. Square v. Ford (In re Roxford Foods)*, 12 F.3d 875, 879 (9th Cir. 1993) ("[N]otice is only required where the party has made an appearance. The appearance need not necessarily be a formal one. . . . In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit.") (internal quotations and citations omitted).

(5) Plaintiff requests attorneys' fees in its motion for default judgment but it has not specified the legal basis that authorizes such an award in this case.

(6) Plaintiff shall address the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), which this Court must consider in order to determine whether default judgment may be entered in this case.

Plaintiff filed its supplemental briefing on May 12, 2015. (Pl.'s Supp. Br., Dkt. No. 21.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). The decision to enter a default judgment lies within the court's discretion. *Id.* at 999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986) (further citations omitted)); *see also Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Before assessing the merits of a motion for default judgment, a court must confirm that it

4

has subject matter jurisdiction over the case and personal jurisdiction over the defendants. *See Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations and quotation marks omitted). The party seeking to invoke the court's jurisdiction bears the burden of establishing that such jurisdiction exists, as "[i]t is to be presumed that a cause lies outside th[e court's] limited jurisdiction." *Id.* A district court has the authority to "raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action." *Snell v. Cleveland, Inc.*, 315 F.3d 822, 826 (9th Cir. 2002).

In this analysis, "the well-pleaded allegations of the complaint relating to the defendant's liability are taken as true." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings or those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) *superseded by statute on other grounds*, Pub. L. No. 100-702, 102 Stat. 4669.

### III.   DISCUSSION

In response to the Court's order requiring supplemental briefing, Plaintiff asserts that this Court has subject matter jurisdiction, specifically diversity jurisdiction, over this case. (Pl.'s Supp. Br, at 3, 4.) The allegations in the complaint, however, are insufficient to establish that such jurisdiction exists. (*See* Compl. ¶¶ 3-5.)

Diversity jurisdiction exists where (1) the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and (2) the parties are completely diverse—i.e., citizens of different states. 28 U.S.C. § 1332.

In its supplemental brief, Plaintiff asserts that it, its members, and Defendant are all citizens of different states, and the amount in controversy exceeds the jurisdictional threshold. (Pl.'s Supp. Br. at 3.) As the Court indicated in its March 31, 2015 order, however, Plaintiff, a Nevada limited liability company, does not identify the citizenship of any of its members in its complaint. (*See* Compl. ¶¶ 3-5.) Absent such allegations, the Court is unable to determine

whether it has subject matter jurisdiction over this action. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("An LLC is a citizen of every state of which its owners/members are citizens."). Thus, while Plaintiff provides additional information in its supplemental brief, it is insufficient to cure the deficiencies in the complaint, as the allegations in the complaint control where a plaintiff seeks relief on a motion for default judgment. *See Cripps*, 980 F.2d at 1267 ("[N]ecessary facts not contained in the pleadings . . . are not established by default.") (citation omitted).

Accordingly, as currently pled, Plaintiff's complaint does not contain allegations that establish this Court's jurisdiction over this case.

### IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for default judgment WITHOUT PREJUDICE. The Court, however, GRANTS Plaintiff LEAVE TO FILE AN AMENDED COMPLAINT so that it may cure the deficiencies discussed above. Additionally, to the extent Plaintiff wishes to advance the theory that Bitesize Networks is the proper Defendant in this case because it is the same entity as Mevio, the amended complaint shall contain sufficient allegations to establish such theory.[4] If Defendant, after being properly served, fails to defend or otherwise respond to the amended complaint, Plaintiff may file a renewed motion for default judgment.[5]

**IT IS SO ORDERED.**

Dated: 08/03/2015

KANDIS A. WESTMORE
United States Magistrate Judge

---

[4] Plaintiff shall also adequately brief the issue when bringing a renewed motion.

[5] To the extent Plaintiff's renewed motion for default judgment includes a request for attorneys' fees, Plaintiff shall identify a proper legal basis for such an award in its briefing.

6